**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MAGARITA CARRERA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:22-cv-01604-GMN-DJA |
| vs. ) | |
| ) | **ORDER GRANTING IN PART AND** |
| ALLIED COLLECTION SERVICES, Inc., ) | **DENYING IN PART MOTIONS FOR** |
| ) | **SUMMARY JUDGMENT** |
| Defendant. ) | |
| ) | |
| _____ ) | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 18), filed by Defendant Allied Collection Services, Inc. Plaintiff Margarita Carrera filed a Response, (ECF No. 22), to which Defendant filed a Reply, (ECF No. 24). Also pending before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 19). Defendant filed a Response, (ECF No. 21), to which Plaintiff filed a Reply, (ECF No. 25).

For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment and Plaintiff's Motion for Summary Judgment.

## I.    BACKGROUND

This action arises from a default judgment obtained by Defendant in Nevada state court in 2009, and the subsequent renewal of that judgment in 2022. (*See generally* Compl., ECF No. 1). Plaintiff alleges this judgment was improperly obtained and renewed through misrepresentations and unfair conduct and brought this action to recover damages under the Federal Debt Collections Practices Act ("FDCPA"). (*Id.*).

### A. The Underlying Judgment

In 2009, Defendant sued Plaintiff in state court alleging that Plaintiff owed $12,490.70 plus 12% interest accruing per annum from a Chase Bank credit account ending in 0814 (the

"Account") pursuant to the "terms of [an] agreement." (State Court Collections Complaint at 2–3, Ex. 1 to Pl.'s Mot. Summ. J., ECF No. 19-3).  Defendant served its complaint on a "Jane Smith" at Plaintiff's former property. (Aff. Serv. At 2, Ex. 3 to Pl.'s Mot. Summ. J., ECF No. 19-3); (Quitclaim Deed at 2, Ex. 4 to Pl.'s Mot. Summ. J., ECF No. 19-6).  After Plaintiff failed to take timely action in this lawsuit, Defendant moved for and obtained default judgment against Plaintiff for a principal amount of $12,490.79 plus 12% interest accruing per annum and $3,373.69 in attorney's fees and costs. (Mot. Default J., Ex. 4 to Allison Smith Decl. to Def. Mot. Summ. J., ECF No. 18-2); (Default J., Ex. 5 to Pl.'s Mot. Summ. J., ECF No. 19-7).

### B. Renewal of Underlying Judgment

In March 2022, Defendant filed an affidavit of renewal of judgment in state court. (Affidavit Renewal, Ex. 6 to Allison Smith Decl. to Def. Mot. Summ. J., ECF No. 18-2).  The amount due was now $32,0507.44 with accrued interest. (*Id.*).  According to Plaintiff, she did not learn of this judgment until May 2022, when Defendant placed a judgment lien on her home. (Margarita Carrera ("Carrera") Decl. ¶¶ 6–7, Ex. 2 to Pl.'s Mot. Summ. J., ECF No. 19-2); (Lien Record at 2, Ex. 6 to Pl.'s Mot. Summ. J., ECF No. 19-8).  Plaintiff maintains that she only began banking with Chase in 2019, so she does not own the Account associated with Defendant's state court judgment. (Carrera Decl. ¶¶ 13–16, Ex. 2 to Pl.'s Mot. Summ. J.).

Plaintiff sent Defendant a letter demanding "verification and validation" that the Account was hers. (Demand Letter, Ex. 7 to Pl.'s Mot. Summ. J., ECF No. 19-7).  Defendant responded with a letter explaining that the state court judgment found that she was the owner of the Account and reported that she now owed a total balance of $41,665.58. (Response Letter, Ex. 8 to Pl.'s Mot. Summ. J., ECF No. 19-10).  Defendant did not produce the agreement showing Plaintiff owned the Account. (*Id.*).

///

///

### C.  Defendant's Alleged Misrepresentations

According to Plaintiff, Defendant made false statements in the state court proceeding by alleging that she owned the Account pursuant "pursuant to the terms of the agreement'" but not producing said Agreement. (Pl.'s Mot. Summ. J.  4:17–19) (citing State Court Collections Complaint at 2, Ex. 1 to Pl.'s Mot. Summ. J.).  Plaintiff maintains that Defendant misrepresented her ownership of the Account. (*Id.* 4:14–16) (citing Carrera Dep. 135:25–136:22, Ex. 1 to Resp. Def.'s Mot. Summ. J., ECF No. 22-1).  Because Plaintiff contends the Account is not hers, she asserts that Defendant is improperly seeking to collect on a debt that is neither authorized by an agreement nor permitted by law. (Pl.'s Mot. Summ. J. 5:5–6).

### D. Plaintiff's Alleged Harms

According to Plaintiff, the judgment lien prevented her from selling her home and caused her to be denied a home equity loan. (Carrera Decl. ¶ 16, Ex. 2 to Pl.'s Mot. Summ. J.). Plaintiff maintains that "[she] is being forced to wait until this lien" is removed to sell her home and apply for a home equity loan. (*Id.* ¶¶ 17–18).  She further avers that she "suffered emotional distress and mental anguish as a result of this ordeal and the shame and embarrassment of having [a] lien on [her] home for a debt that is not [hers]." (*Id.* ¶ 20).

### E. Current Litigation

Plaintiff brought the instant action, alleging Defendant's conduct violated several provisions of the FDCPA. (*See generally* Compl.).  She maintains that the validity of "the alleged debt" under the Account is "immaterial to this action," (*id.* ¶ 9), but expressed that her intent in bringing this lawsuit is to ultimately vacate the underlying state court judgment because she does not own the debt. (Carrera Dep. 96:14–97:12, 141:19–142:10, Ex. 1 to Resp. Def.'s Mot. Summ. J.).  The parties filed cross-motions for summary judgment, (ECF Nos. 18, 19), which the Court discusses below.

///

1   II.    **LEGAL STANDARD**

2          The Federal Rules of Civil Procedure provide for summary adjudication when the

3   pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4   affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

5   is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

6   may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

7   (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on

8   which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount

9   of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or

10  judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*,

11  718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253,

12  288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all

13  inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's

14  favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal

15  purpose of summary judgment is "to isolate and dispose of factually unsupported claims."

16  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

17         In determining summary judgment, a court applies a burden-shifting analysis.  "When

18  the party moving for summary judgment would bear the burden of proof at trial, it must come

19  forward with evidence which would entitle it to a directed verdict if the evidence went

20  uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

21  the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

22  *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation

23  marks and citations omitted).  In contrast, when the nonmoving party bears the burden of

24  proving the claim or defense, the moving party can meet its burden in two ways: (1) by

25  presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

1    demonstrating that the nonmoving party failed to make a showing sufficient to establish an

2    element essential to that party's case on which that party will bear the burden of proof at trial.

3    *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden,

4    summary judgment must be denied and the court need not consider the nonmoving party's

5    evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

6         If the moving party satisfies its initial burden, the burden then shifts to the opposing

7    party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v.*

8    *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute,

9    the opposing party need not establish a material issue of fact conclusively in its favor.  It is

10   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

11   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

12   *Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on

13   denials in the pleadings but must produce specific evidence, through affidavits or admissible

14   discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404,

15   1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical

16   doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002)

17   (quotation marks and citation omitted).  "The mere existence of a scintilla of evidence in

18   support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other

19   words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory

20   allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th

21   Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the

22   pleadings and set forth specific facts by producing competent evidence that shows a genuine

23   issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

24        At summary judgment, a court's function is not to weigh the evidence and determine the

25   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is "merely colorable or is not significantly probative, summary judgment may be granted." *See id.* at 249–50 (internal citations omitted).

## III.    <u>DISCUSSION</u>

"[W]hen simultaneous cross-motions for summary judgment on the same claim are before the court," like they are here, "the court must consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001). The Court begins with Defendant's Motion for Summary Judgment.

### A.  Defendant's Motion for Summary Judgment

Defendant contends it is entitled to summary judgment for three reasons. (*See generally* Def.'s Mot. Summ. J.). First, Defendant argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine. (*Id.* 10:11–13:11). Second, Defendant contends that this Court lacks subject matter jurisdiction because Plaintiff has not suffered a concrete injury necessary for her to have Article III standing. (Reply Def.'s Mot. Summ. J. 2:17–3:3, ECF No. 24). Finally, Defendant advances that there is no material dispute of fact showing it violated the FDCPA. (Def.'s Mot. Summ. J. 15:19–20:28). The Court begins by examining whether Plaintiff's claims are barred by the *Rooker-Feldman* doctrine.

#### 1.  *Rooker-Feldman* Doctrine

Defendant argues that Plaintiff's FDCPA claims are barred by the *Rooker-Feldman* doctrine because the adjudication of those claims by this Court would undermine the state court judgment and serve as a de facto appeal. (Def. Mot. Summ. J. 10:10–13:11). In response, Plaintiff advances that her claims are not a forbidden de facto appeal because "she asserts legal

1   wrongs by Defendant in its debt collection practices that encompass more than just obtaining

2   the [s]tate [c]ourt judgment." (Resp. Def.'s Mot. Summ. J. 6:20–22, ECF No. 22).

3       The *Rooker-Feldman* doctrine derives its name from two Supreme Court cases: *Rooker*

4   *v. Fidelity Trust Company*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460

5   U.S. 462 (1983).  The *Rooker-Feldman* doctrine precludes federal district courts from hearing

6   cases in which the "federal plaintiff asserts as a legal wrong an allegedly erroneous decision by

7   a state court and seeks relief from a state court judgment based on that decision." *Benavidez v.*

8   *Cnty. of San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021) (internal quotation marks and citation

9   omitted).  Review of such state court decisions may be conducted only by the United States

10  Supreme Court. *See* 28 U.S.C. § 1257; *see also Exxon Mobil Corp. v. Saudi Basic Indust.*

11  *Corp.*, 544 U.S. 280, 291 (2005).

12      Even when a plaintiff brings a de facto appeal of a state court judgment, *Rooker-*

13  *Feldman* does not bar a federal suit if that judgment was obtained by extrinsic fraud. *Kougasian*

14  *v. TMSL, Inc.*, 359 F.3d 1136, 1141 (9th Cir. 2004).  Fraud on a court is "not an error by that

15  court," but instead is "a wrongful act committed by the party or parties who engaged in the

16  fraud." *Id.*  "*Rooker-Feldman* therefore does not bar subject matter jurisdiction when a federal

17  plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a

18  state court judgment obtained by that fraud." *Id.*  If the parties had raised the issue of fraud

19  before the state court, however, and the state court made a determination that there was no

20  fraud, then *Rooker-Feldman* would apply. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 860

21  (9th Cir. 2008).

22      Broadly speaking, Plaintiff's claims can be bifurcated into those predicated on

23  Defendant's alleged misrepresentations in obtaining the state court default judgment, and its

24  actions taken to then collect on that judgment.  The Court first examines Plaintiff's claims

25  based on Defendant's actions to obtain the state court judgment.

1

*a.  Actions to Obtain the State Court Default Judgment*

2      Plaintiff advances that Defendant misrepresented in the state court action that she was

3  the owner of the Account, and falsely represented that she owed the debt underlying the

4  Account. (Resp. Def. Mot. Summ. J. 7:2–8:24).  She further maintains that Defendant failed to

5  produce the agreement showing she was the owner of the Account. (*Id.*).  Defendant contends

6  that these claims are barred by *Rooker-Feldman* because for Plaintiff to prevail in this case, the

7  Court would have to effectively reverse the state court judgment by finding she did not own the

8  Account. (Reply Def.'s Mot. Summ. J. 3:4–4:6).

9      Several courts in the Ninth Circuit have analyzed claims similar to those advanced by

10  Plaintiff and determined that claims brought on the execution of a default judgment for debt

11  were barred by the *Rooker-Feldman* doctrine. *See Grant v. Unifund CCR Partners*, 842 F.

12  Supp. 2d 1234, 1239 (C.D. Cal. 2012) ("Were the Court to rule that [defendant] committed any

13  of those alleged wrongs, it would undercut the state ruling that plaintiff was in fact served with

14  a copy of the summons and complaint, owed the debt to [defendant], and authorized

15  [defendant] to execute a Writ of Execution"); *Tait v. Asset Acceptance, LLC*, No. 12-cv-9532,

16  2013 WL 3811767, at *4 (C.D. Cal. July 22, 2013) (same); *Bryant v. Gordon & Wong Law

17  Grp., P.C.*, 681 F. Supp. 2d 1205, 1209 (E.D. Cal. 2010) (same).

18      Nevertheless, several cases in the Ninth Circuit have come out the other way. *See, e.g.*,

19  *Britton v. ABC Legal Services, Inc.*, No. 17-cv-07070, 2018 WL 3207907 at *7 (N.D. Cal. June

20  29, 2018) ("Plaintiff's assertion that [defendant] filed a fraudulent affidavit and declaration of

21  service" in state court not barred by *Rooker-Feldman* doctrine); *Rubio v. LVNV Funding, LLC*,

22  No. 14-cv-05395, 2015 WL 13650046, at *4 (N.D. Cal. July 21, 2015) ("The filing of a false

23  proof of service in order to obtain a default judgment constitutes extrinsic fraud under the Ninth

24  Circuit" and thus the *Rooker-Feldman* doctrine does not apply); *Engelen v. Erin Capital Mgmt.*,

25  No. 10-cv-01125, 2011 WL 3844587, at *1 (S.D. Cal. Aug. 30, 2011) (writing that a plaintiff

1  who alleged that defendant "obtained a default judgment against Plaintiff in state court by

2  falsely representing to the state court that Plaintiff had been served with the summons and

3  complaint" was not barred by the *Rooker-Feldman* doctrine).

4      The second set of cases rely on the Ninth Circuit's instruction that *Rooker-Feldman* does

5  not bar cases where a plaintiff alleges extrinsic fraud on the state court because "a plaintiff

6  alleging extrinsic fraud on a state court is not alleging a legal error of a state court; rather, he or

7  she is alleging a wrongful act by the adverse party." *Kougasian*, 359 F.3d at 1140–41. As a

8  result, these cases all involve instances where the plaintiff asserted specific fraudulent conduct

9  undertaken by a defendant in state court. *See Britton*, 2018 WL 3207907, at *7; *Rubio*, 2015

10  WL 13650046, at *4; *Engelen*, 2011 WL 3844587, at *1.

11      Here, Plaintiff's claims based on Defendant's conduct fall into the latter rather than the

12  former camp. It is Defendant's alleged fraudulent "conduct in bringing the lawsuit" that is the

13  basis for Plaintiff's injury, not the state court judgment. *Dexter v. Tran*, 654 F. Supp. 2d 1253,

14  1260 (E.D. Wash. 2009). That is, Plaintiff's claim is predicated on her contention that

15  Defendant committed extrinsic fraud by falsely representing she owned the Account without

16  producing the agreement. Moreover, Plaintiff seeks only statutory damages for Defendant's

17  conduct, not "relief from the state court judgment."[1] *Kougasian*, 359 F.3d at 1140.

18  Accordingly, the Court finds that Plaintiff's claims based on Defendant's conduct in obtaining

19  the state court judgment are not barred by *Rooker-Feldman*.

20  ///

21  ///

22  ///

23

24  [1] The Court recognizes that Plaintiff explained in her deposition testimony that her goal was to have the state

25  court judgment vacated. (Carrera Dep. 135:25–136:22, Ex. 1 to Resp. Def.'s Mot. Summ. J.). But to focus on a
statement made in isolation, especially one made by an individual untrained in the vagaries of a jurisdictional
doctrine, would elevate form over substance. The substance of Plaintiff's claim raises a challenge based on
extrinsic fraud, even if the form was unartfully delivered in a deposition.

### b. Collection Actions on the State Court Judgment

In contrast, Plaintiff's FDCPA claims relating to Defendant's collection of the state court judgment are not independent claims; instead, the injuries they allege are the result of the state-court judgment and are thereby barred under *Rooker-Feldman*.  For example, her 15 U.S.C. § 1692e claims argue that Defendant used "false, deceptive, and misleading representations" in attempting to collect the state court judgment because she does not own the Account, so any attempt to collect the debt is invalid. (Resp. Def.'s Mot. Summ. J. 7:1–8:12). Similarly, her 15 § U.S.C. 1692f claim advances that Defendant has employed unfair or unconscionable means in collection of the debt because it has not produced an agreement showing Plaintiff owns the Account, so Defendant is "neither authorized by an agreement or permitted by law" to collect the debt. (*Id.* 8:13–24).  These claims ignore that by entering default judgment, the state court permitted Defendant to collect on that judgment.  The United States District Court for the Central District of California's decision in *Riding v. Cach LLC*, 992 F. Supp. 2d 987 (C.D. Cal. 2014), is helpful in examining Plaintiff's claims.

In *Riding*, the plaintiff alleged a variety of different types of FDCPA claims after a state court had entered judgment on the underlying debt. *Id.* at 992–94.  The court divided the FDCPA claims into those that sought to "undercut the state court ruling" and those that were premised on "improper collection methods." *Id.*  at 994.  The former was barred by *Rooker–Feldman* but the latter were not.  In context, that meant the plaintiff could not assert any FDCPA claims premised on him being found not liable for the state court judgment, but the plaintiff could contest the manner in which the defendant went about obtaining that judgment. *Id.* at 994–95.

Here, Plaintiff does not contend, nor does the record show, that Defendant used abusive language or harassing tactics to collect the state court judgment.  Additionally, Defendant was authorized by law to collect the debt pursuant to the state court judgment.  So, Plaintiff's claims

are predicated on her contention that she did not own the Account, and thereby the debt, underlying the state court judgment. "Essentially, because [Plaintiff] believes the state-court debt to be invalid, she contends that [Defendant's] attempts to collect on the debt are also invalid. But this Court cannot review or undo the state-court judgment." *Worley v. Simon Meyrowitz & Meyrowitz, P.C.*, No. 23-187, 2023 WL 8664375, at *3 (2nd Cir. Dec. 15, 2023) (citing *Exxon Mobil Corp.*, 544 U.S. at 293; *see also Brooks v. Laughlin Memorial Hospital, Inc.*, No. 2:18-cv-146, 2019 WL 13216633, at *9 (E.D. Tenn. June 26, 2019) ("Plaintiff's claim that the FDCPA Defendants attempted to collect form Mrs. Brooks a debt that she did not owe is indistinguishable from a challenge to the state court's judgment that Mrs. Brooks owes the debt in question."). These claims are directly challenging the underlying debt and not Defendant's collections efforts, so they are barred by *Rooker-Feldman*.[2] Accordingly, the Court GRANTS Defendant's summary judgment to the extent Plaintiff's 15 U.S.C. § 1692e and f claims are based on Defendant's attempt to collect on the state court judgment.

### 2. Standing

Defendant next contends that this Court lacks subject matter jurisdiction. Specifically, Defendant argues Plaintiff has failed to introduce evidence showing she suffered a concrete injury, and therefore, cannot make the requirements for Article III standing. (Def. Mot. Summ. J. 2:17–3:3).

To establish constitutional standing, "a plaintiff must show (1) [he or she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be

---

[2] Alternatively, the Court would find these claims fail on the merits. Defendant's attempt to collect on the default judgment while the state court judgment was in effect would not misrepresent the "legal status" of the judgment, 15 U.S.C. § 1692e(2)(A) or constitute a "threat to take any action that cannot be legally be taken," *id.* 1692e(5), because judgment was entered against Plaintiff at the time of any collection effort.

redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180–81 (2000).  "Plaintiff bears the burden of establishing standing, and [when] standing is challenged at the summary judgment stage, plaintiff must set forth specific facts to show each of the elements of standing." *Fair Hous. Council of Or. v. Travelers Home & Marine Ins. Co.*, No. 3:15-cv-00925, 2016 WL 7423414, at *3 (D. Or. Dec. 2, 2016) (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), *and Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884–85 (1990)).

Prior to the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, (2021), courts within this Circuit, including, occasionally, the Ninth Circuit itself, held that a violation of the FDCPA's statutorily conferred rights constituted a cognizable Article III injury in and of itself. *See, e.g., Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1116 (9th Cir. 2014); *Martinez v. Integrated Cap. Recovery, LLC*, 513 F. Supp. 3d 1219, 1225 (E.D. Cal. 2021) ("This Court agrees that a violation of the FDCPA can constitute a cognizable injury sufficient for standing.").  In *TransUnion*, however, the Supreme Court clarified that a concrete injury is one that causes either a "physical or monetary injury to the plaintiff," or alternatively, if intangible, that it bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." 594 U.S. at 425.  The latter inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*.

To show concrete injury, Plaintiff relies on the damages she suffered because of the lien placed on her home and the harm caused by Defendant's alleged procedural violations of the FDCPA. (*See generally* Reply Pl.'s Mot. Summ J., ECF No. 25).  The Court finds that both are sufficient to show a concrete injury, and concludes it has jurisdiction over this case.

First, the lien on Plaintiff's home is a "cloud on [her] title to property" and "is a harm that has been recognized by common law as actionable, providing a basis for lawsuits in

American courts." *Corbit v. Old Republic Ins. Co.*, No. 5:22-cv-031, 2023 WL 3514444, at *4 (N.D. Tex. May 17, 2023) (finding the plaintiff had standing because of the lien placed by defendant in a FDCPA lawsuit). That is, a plaintiff "seeking to remove a cloud on their property traditionally bring a quiet-title claim." (*Id.*); *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534–35 (6th Cir. 2014) (describing a debt collector filing an improper judgment lien as more than "mere technical violation of [state] law" which placed an "improper legal burden on [the plaintiff's] home") (citing *Tucker v. Grace Enters. of Ky., LLC*, No. 2003-cv-002341, 2004 WL 2566518, at *1–2 (Ky. Ct. App. Nov. 12, 2004) (illustrating the use of a quiet title action to remove an improper judgment lien; noting that the lien prevented the conveyance of a marketable title in the property)).

Moreover, at least one circuit court has held that a debt collector, filing a claim of lien, is a tangible harm sufficient to confer standing. *See, e.g.*, *Toste v. Beach Club at Fontainebleau Park Condominium Association, Inc.*, No. 21-14348, 2022 WL 4091738 (11th Cir. Sept. 7, 2022). In *Toste*, the plaintiff failed to pay condominium dues, the association referred the matter to a law firm, and the law firm attempted to collect the debt (by threatening to file a claim of lien and then actually filing a claim a lien and threatening to foreclose if payment of past due amounts was not made). *Id.* at *1. The plaintiff disputed the amount of the debt, had to retain a lawyer, and ultimately filed a lawsuit for violation of the FDCPA. *Id.* The court determined that the plaintiff suffered concrete harm in the form of wasted time and emotional distress, and in any event the plaintiff suffered concrete harm in the form of the claim of lien, which by itself was sufficient to confer standing. *Id.* at *4.

The Court finds the reasoning in *Toste* persuasive. A lien is an encumbrance on property that is a tangible harm sufficient to give standing. This is true regardless of whether a lien is considered a harm recognized at common law. Defendant's lien was a product of its

///

1    alleged improper practices in obtaining the state court judgment and is a harm sufficient to give

2    Plaintiff standing.

3        Second, the Court finds that the procedural violations of the FDCPA alleged by Plaintiff

4    are also sufficient to confer standing.  Specifically, the fulcrum of Plaintiff's claim is that

5    Defendant brough the state court action without producing the Agreement and thereby falsely

6    representing she owned the debt.  This form of lawsuit bears a close relationship to the well-

7    recognized tort of the wrongful use of civil proceedings. *See Viernes v. DNF Assocs.*, 582 F.

8    Supp. 3d 738, 750 (D. Haw. 2022) ("There is a close relationship between being subjected to an

9    unlawful lawsuit and the four elements of wrongful civil proceedings."). *Viernes*'s element-by-

10   element analysis of an FDCPA claim is persuasive here. *Id.* at 749–52.  Accordingly, the Court

11   finds Plaintiff's claim that she was subjected to an unlawful lawsuit is a concrete harm. *Id.* at

12   752.  Having found that the Court has jurisdiction, it now proceeds to the merits of Plaintiff's

13   claims.

14       **3.  15 U.S.C. § 1692e**

15       Section 1692e provides that "[a] debt collector may not use any false, deceptive, or

16   misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

17   1692e.  Section 1692e(5) prohibits a "threat to take any action that cannot legally be taken"

18   while 1692e(10) bars the "use of any false representation or deceptive means to collect or

19   attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §

20   1692e(5), (10).  "Whether conduct violates §§ 1692e . . . requires an objective analysis that

21   takes into account whether 'the least sophisticated debtor would likely be misled by a

22   communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)

23   (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007).

24       Defendant contends that Plaintiff's § 1692e claims fail because it engaged in no

25   improper conduct in attempting to collect Plaintiff's alleged debt after it obtained the state court

1   default judgment. (Def. Mot. Summ. J. 15:9–16:27).  The Court agrees with Defendant to the

2   extent its argument is based on its actions after it obtained the state court judgment.  That is,

3   Defendant was entitled to collect on a valid judgment, and Plaintiff has introduced no evidence

4   showing it used false representation or deceptive means to collect on the judgment.  The Court

5   disagrees with Defendant, however, to the extent Plaintiff's § 1692e are predicated on

6   Defendant's alleged improper conduct in bringing the state court lawsuit despite being aware

7   that Plaintiff was not subject to the agreement.

8          The Court concludes that Plaintiff has presented triable issues of fact under § 1692e, §

9   1692e(5), and § 1692e(10).  "Court filings can be a threat under the FDCPA." *Currier*, 762

10  F.3d at 535; *see also Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 229–32 (4th Cir.2007)

11  (holding that the FDCPA applies to interrogatories and motions for summary judgment);

12  *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472–73 (7th Cir.2000) (holding that the

13  FDCPA applies to a complaint).  And "[f]iling a state court complaint alleging a nonexistent

14  debt" violates these sections. *Heathman v. Portfolio Recovery Assocs., Inc.*, No. 12-cv-201,

15  2013 WL 755674, at *3 (S.D. Cal. Feb. 2013).

16         Plaintiff plausibly asserts that Defendant falsely represented in state court that she owed

17  a debt and used that false representation to collect the debt from her.  To date, Defendant has

18  not produced the agreement showing Plaintiff is liable for the debt.  The only evidence

19  provided by the parties as to who owns the account are Plaintiff's assertions disavowing

20  ownership. (Carrera Dep. 135:25–136:22, Ex. 1 to Resp. Def.'s Mot. Summ. J.).  Viewing the

21  evidence in the light most favorable to Plaintiff, the Court finds that a material dispute of fact

22  exists as to her § 1692e claims because Defendant initiated a lawsuit to claim a nonexistent

23  debt. *See, e.g.*, *Cox v. Hilco Receivable, L.L.C.*, 726 F.Supp.2d 659, 666 (N.D.Tex.2010) ("[A]

24  debt collector's representation that a debt is owed to it when it in fact is not, amounts to a

25  ///

1  misrepresentation barred by the FDCPA.").  Accordingly, the Court declines to grant

2  Defendant summary judgment as to these claims.

3  ### 4.  15 U.S.C. § 1692f

4  Section 1692f provides that "[a] debt collector may not use unfair or unconscionable

5  means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.  Further, § 1692f(1)

6  prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense

7  incidental to the principal obligation) unless such amount is expressly authorized by the

8  agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).  "Many courts have

9  interpreted [§] 1692f(1) to address the abusive practice of 'collecting an amount greater than

10  that which is owing,' not collecting on a debt that turns out to have been incurred by another

11  person." *Opico v. Convergent Outsourcing, Inc.*, No. 18-cv-1579, 2021 WL 1611505, at *9

12  (W.D. Wash. Apr. 26, 2021) (collecting cases); *see also Clark*, 460 F.3d at 1178 ("[W]hen [the

13  debt collector] pursues a debt it knows is overstated . . . [it] seeks to collect an amount that is

14  not permitted by law in contravention of § 1692f(1).").

15  Plaintiff contends that Defendant violated § 1692f and (f)(1) when it sought to collect

16  amounts from her that were not authorized by the agreement creating the debt (because, as

17  Plaintiff argues, there was no debt owed by her). (Resp. Def. Mot. Summ. J. 8:19–22).  In other

18  words, Plaintiff advances that Defendant violated § 1692f based on the same alleged conduct

19  underlying her § 1692e claims—*i.e.*, that she did not ultimately owe the debt that Defendant

20  sought to collect.  Defendant contends that Plaintiff's § 1692f claims fail because they are

21  based on the same alleged misconduct that form the basis for her 1692e claims. (Reply Def.

22  Mot. Summ. J. 5:19–6:3).  The Court agrees with Defendant that Plaintiff's § 1692f claim fails

23  because it is duplicative of her other claims.  It also finds that Defendant is entitled to summary

24  judgment on Plaintiff's § 1692f(1) claim because no violation of the subsection occurred.

25  *///*

The Ninth Circuit has held that the same alleged misconduct can support claims under multiple sections of the FDCPA. *See, e.g., Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006) ("[W]e (as well as other courts) routinely have allowed debtors to pursue causes of action[ ] under multiple sections of the FDCPA, even though each violation was based upon the same circumstances."); *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 n.10 (9th Cir. 1994) ("[I]t is not unusual for an action to violate more than one FDCPA provision.").  Nevertheless, despite the Ninth Circuit's holding in *Clark*, many district courts in the Ninth Circuit have found a plaintiff's § 1692f claim fails if it does not allege any misconduct beyond which the plaintiff asserts violate other provisions of the FDCPA. *See, e.g., Muzyka v. Rash Curtis & Assocs.*, No. 2:18-cv-01097, 2019 WL 2869114, at *6–7 (E.D. Cal. July 3, 2019); *Martin v. Target Card Servs.*, No. 17-cv-5372, 2018 WL 2723258, at *5 (C.D. Cal. Apr. 24, 2018); *Muzyka v. Rash Curtis & Assocs.*, No. 2:18-cv-01097, 2019 WL 2869114, at *6–7 (E.D. Cal. July 3, 2019); *Thomas v. Loomis-Therrien*, No. 5:14-cv-00979, 2014 WL 5335913, at *6 (C.D. Cal. Oct. 20, 2014); *Amina v. WMC Mortg. Corp.*, No. 10--cv00165, 2011 WL 1869835, at *16 (D. Haw. May 13, 2011); *see also Fox*, 15 F.3d at 1516 (finding no violation of § 1692f when "no evidence ha[d] been offered of any conduct by the defendants in the least comparable with the conduct condemned [by § 1692f]").  This is because § 1692f is a "backstop" for misconduct that is not specifically addressed elsewhere in the FDCPA. *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1418 n.4 (2017) (Sotomayor, J. dissenting).

Here, Plaintiff's § 1692f claim is predicated on the same alleged misconduct as her § 1692e claim.  That is, Defendant violated the FDCPA when it misrepresented to the state court that Plaintiff owned the Account, and thereby the debt, pursuant to an agreement.  In light of § 1692f's purpose as an auxiliary "backstop", the Court GRANTS Defendant summary judgment on Plaintiff's § 1692f claim because it is predicated on the same misconduct that underlies her § 1692e claims.

1    Next, for Plaintiff to succeed on a claim brought under § 1692f(1) claim, she would need

2    to show that Plaintiff sought to collect an amount greater than that which was authorized by the

3    underlying debt agreement.  Plaintiff's filings are unclear, but her claim appears to advance that

4    Defendant violated this section by failing to collect any amount because she maintains she does

5    own any debt.  Thus, "Plaintiff's contention that [Defendant] attempted to collect a debt she did

6    not owe, does not dispute or assert that the amount [Defendant] sought to collect was greater

7    than that authorized by the underlying debt agreement." *Chavira v. U.S. Dep't of Education*,

8    No. 1:19-cv-00538, 2022 WL 1082568, at * (E.D. Cal. Apr. 11, 2022).  Rather, "where the

9    amount being collected by the collection agency [is] not different than the amount owed, §

10   1692f(1) [is] inapplicable to the plaintiff's claim that the collection agency was attempting to

11   collect the debt from the wrong person." *Blackmon v. Ad Astra Recovery Servs., Inc.*, No. 3:20-

12   cv-00800, 2021 WL 1541647, at *3 (S.D. Cal. Apr. 20, 2021); *see Valdez v. Action Fin. Servs.,*

13   *LLC*, No. 3:20-cv-00015, 2021 WL 5108755, at *8–9 (D. Nev. Aug. 3, 2021) (granting

14   summary judgment in favor of a debt collector on a § 1692f(1) claim that was based on the debt

15   collector seeking to collect a student loan debt that did not belong to the plaintiff).

16   Accordingly, the Court also GRANTS Defendant summary judgment on Plaintiff's § 1692f(1)

17   claim.

18        **5. Bona Fide Error Defense**

19        Finally, Defendant contends the bona fide error defense precludes liability for Plaintiff's

20   § 1692e claims. (Def. Mot. Summ. J. 19:18–21:1).  "The bona fide error defense is an

21   affirmative defense, for which the debt collector has the burden of proof." *McCollough v.*

22   *Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011) (citation omitted).

23   The defense provides:

24        A debt collector may not be held liable in any action brought under [the FDCPA]
         if the debt collector shows by a preponderance of evidence that the violation was
25        not intentional and resulted from a bona fide error notwithstanding the
         maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "Thus, to qualify for the bona fide error defense, the defendant must prove that (1) it violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *McCollough*, 637 F.3d at 948.

Defendant's evidence of its training and procedures are found in the declaration and deposition of Allison Smith, its Legal Director. (Def. Mot. Summ. J. 20:18–26); (Smith Decl. ¶ 1 to Def. Mot. Summ. J.). In her declaration, Smith asserted that Defendant "has established procedures for placing liens on homes of debtors. [Defendant] also has procedures for training its employees to follow these procedures. There are . . . employees who are responsible for supervising and making sure procedures are followed." (Smith Decl. ¶ 25 to Def. Mot. Summ. J.). In her deposition, Smith engaged with the following colloquy with Plaintiff's attorney,

> [Plaintiff's Attorney]: And can you tell us why [Defendant] placed a lien on Plaintiff's home?
>
> [Allison Smith]: Placing a lien on the home is one of the judgment enforcement avenues that are taken when there's a judgment obtained against a Defendant and they own property.
>
> [Plaintiff's Attorney]: Does Allied have procedures that it has established for placing liens on the homes of debtors, real estate debtors?
>
> [Allison Smith]: In general, yes.
>
> [Plaintiff's Attorney]: Does Allied have a system for training its employees to follow these procedures?
>
> [Allison Smith]: I'm sorry. Did you – can you repeat the question?
>
> [Plaintiff's Attorney]: Yes. Does Allied have procedures for training its employees to follow these procedures?
>
> [Allison Smith]: In general, yes.
>
> [Plaintiff's Attorney]: Okay, and does Allied have employees who are

1    responsible for supervising and making sure that these procedures are
2    followed?

3    [Allison Smith]: In general, yes.

4  (Allison Smith Dep. 25:11–26:9, Ex. 11 to Def. Mot. Summ. J.).

5         Defendant has not met its burden of proving that it affirmatively maintained procedures
6  designed to avoid the type of error at issue in this case.  "If the bona fide error defense is to
7  have any meaning in the context of a strict liability statute, then a showing of 'procedures
8  reasonably adapted to avoid any such error' must require more than a mere assertion to that
9  effect." *Reichert v. Nat'l Credit Sys. Inc.*, 531 F.3d 1002, 1007 (9th Cir. 2008).  Rather, "[t]he
10  procedures themselves must be explained, along with the manner in which they were adapted to
11  avoid the error." *Id.*  Defendant's evidence "merely alludes vaguely to broad training topics
12  without any explanation, or supporting evidence, showing what that training specifically
13  entailed and how it could have prevented" the issue underlying this case. *Creager v. Columbia*
14  *Debt Recovery*, 618 F. Supp. 3d 1094, 1105 (W.D. Wash. 2022); *see Parker v. Peters &*
15  *Freedman, LLP*, No. 17-cv-00667, 2018 WL 5904169, at *5 (C.D. Cal. Apr. 9, 2018) (finding
16  defendant's reference to an employee training program insufficient because it "does not provide
17  the Court with any facts as to how these programs are designed to avoid the specific error at
18  issue").  "Nor does Defendant offer any evidence corroborating that any such training actually
19  took place and that the employees involved in Plaintiff's debt collection participated in it."
20  *Creager*, 618 F. Supp. 3d at 1105.  In short, Defendant has not met its burden of proving that it
21  affirmatively maintained specific procedures designed to avoid the type of error at issue in this
22  case.   Accordingly, Defendant is not entitled to invoke the bona fide error defense.
23  ///
24  ///
25  ///

### 6. Conclusion

Before addressing Plaintiff's Motion for Summary Judgment the Court seeks to clarify its ruling. The Court GRANTS Defendant summary judgment on Plaintiff's § 1692e and f claims to the extent they are based on Defendant's conduct after it obtained the state court judgment. It does so because these claims are barred by the *Rooker-Feldman* doctrine, and, alternatively, fail on the merits. The Court DENIES Defendant's summary judgment on Plaintiff's 15 U.S.C. § 1692e claims to the extent they are based on Defendant's conduct in obtaining the state court judgment. These claims are not barred by the *Rooker-Feldman* doctrine, based on a concrete harm suffered by Plaintiff that confers the Court with jurisdiction, supported by the record, and not precluded by the bona fide defense doctrine. Having clarified its ruling, the Court now turns to Plaintiff's Motion for Summary Judgment.

### B. Plaintiff's Motion for Summary Judgment

When evaluating Plaintiff's Motion for Summary Judgment, the Court must view evidence in the light most favorable to Defendant. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). Because Plaintiff bears the burden of proof at trial, she must affirmatively demonstrate that no reasonable trier of fact could find other than for her. *See Celotex*, 477 U.S. at 323.

At the outset, Defendant's Response includes many of the same arguments that it advanced in its Motion for Summary Judgment. This includes Defendant's contention that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine, fail because she lacks standing under Article III, or are precluded by the bona fide defense doctrine. (*See generally* Resp., ECF No. 21). The Court applies the same reasoning it employed above and reaches the same outcomes. Accordingly, the Court's analysis is limited to whether Plaintiff is entitled to summary judgment on her § 1692(e) claims predicated on Defendant's conduct in obtaining the

state court judgment.[3]  Here, the Court finds Plaintiff is entitled to summary judgment on these claims for two reasons.

First, Plaintiff maintains she only began banking with Chase in 2019, so she does not own the account underlying the debt. (Carrera Decl. ¶¶ 13–16, Ex. 2 to Pl.'s Mot. Summ. J.). While Plaintiff's assertions are self-serving, they are cognizable at this stage because they state facts based on personal knowledge. *See Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) ("[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory.").  Second, it is undisputed that Defendant never produced the Agreement showing Plaintiff owned the Chase account.  Not only has Defendant not produced the Agreement, but it has also submitted no evidence showing Plaintiff owned the Chase account.

Taken together, the record before the Court lends itself to the conclusion that Defendant misrepresented to the state court Plaintiff's ownership of the Chase account and initiated a legal action that could not legally be taken.  Plaintiff is entitled to recover damages that Defendant caused by taking these improper actions, constituting extrinsic fraud to obtain default judgment, which occurred before the state court judgment; and thus the state court judgment did not cause her injuries.  Accordingly, the Court finds Plaintiff is entitled to summary judgment on her § 1692e claims.

---

[3] Plaintiff's Motion only moved for summary judgment on her claim under § 1692(e)(10) and not (e) and (e)(5). (*See generally* Pl. Mot. Summ. J.).  Her Reply, however, argued that she was entitled to summary judgment on all her § 1692(e) claims. (Reply Pl. Mot. Summ. J. 3:11–4:21, ECF No. 25).  "[A] district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Nevertheless, Defendant's Response noted that Plaintiff only moved for partial summary judgment, and still chose to address all her claims. (Resp. Pl. Mot. Summ. J., ECF No. 21).  Because Defendant addressed all of Plaintiff's claims, the Court finds it would not be prejudiced by it considering all of Plaintiff's § 1692(e) claims. Defendant may file a motion for reconsideration if it has new argument it failed to raise.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 18), is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 19), is **GRANTED in part** and **DENIED in part**.

The Clerk of Court is kindly instructed to close the case and enter judgment in favor of Plaintiff on her § 1692e claims to the extent they are based on Defendant's conduct in obtaining the state court default judgment. Defendant is entitled to judgment on Plaintiff's § 1692e claims to the extent they are based on Defendant's conduct after it obtained the state court judgment, and Plaintiff is entitled to judgment on her § 1692f claims in their entirety.

**DATED** this __31__ day of July, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT